Good morning, Your Honor, Samantha's of the Court, my name is Jeremy Friedman, I'm appearing on behalf of the Relators, Nancy Smith, Orton D. Johnson, and Relators Counsel, Arnold Wofford. A big question in this case is whether or not the criminal restitution by defendant Van Dyck is an alternate remedy once the Relators are entitled to share. We suggest the Court adopt a clear rule, after the Relator files a GTAM action, where the government recovers money in another proceeding, it is an alternate remedy to which the Relators are entitled to a share if the defendant is entitled to a damage credit. The key legal issue here is that the United States cannot collect the same damages twice. When there is a dollar-for-dollar credit, there has to be an alternate remedy. In this case, every dollar that is collected by the United States as part of the restitution has to be paid back to the defendant Van Dyck in the GTAM cases. Under those circumstances, it needs to be considered an alternate remedy. We urge the Court to make that the basis for the holding here. When there is a damage credit, the Relators are entitled to a share. The principle that I just stated is the basis for this Court's decision in Barajas at page 1011, where it specifically referenced the appropriate credit for funds paid. It's also the basis for the Sixth Circuit decision in Bledsoe at pages 49 and 650 of that decision. And it's also the distinguishing factor in the Curlander decision cited by the United States, where the restitution was paid to New Jersey schools, not to federal funds, since there was no credit, there was no alternate remedy. As for timing, we believe the Relators should be able to... Yes, as it relates to timing, some of you just highlighted it as that. I know. What does that mean? I said, what else do you think is the most material aspect that your clients contributed to this investigation? I want to know that, because the criminal investigation didn't start  It's your honor, the investigation, or at least an inquiry, did start before the Relators did their disclosure. But the fact that it started the investigation is not the trigger. In fact, that's the government's position, as long as the government had already started the investigation. They didn't start it, they had done substantial work, and of course, received a lot of information in connection with safeguard, is that right? Yes, there was an investigator, A. Eaton, who was the investigator's name, and he had seen that the defendant had higher billing of a certain code, and that prompted an inquiry. When the inquiry came in, actually it was Nancy Smith, the Relator, that contacted the office, and then made a phone call, Well, the contact was with members of an anonymous contact, right? Yes, that anonymous contact was in February of 2012, and the lawsuit was filed in July of 2012. What evidence do you have that your client's information, or whatever she did, was material? What's the most compelling thing that you can point to, with respect to what your clients offered? In the timeline of the incidents before their disclosure, it was only in the inquiry subsequent, two years after they filed the QTM action, that was the first time that the government had started a proceeding, where they had asked for a criminal search warrant. To answer my question, can you please point to what it is that your clients did that was so significant, that should have overshadowed whatever investigation was seen in the criminal case? Factually, Your Honor, what they did was that they disclosed that the mail of all suits that the defendant was doing was being miscoded, and was being up-coded, and that it was being fraudulently billed, but all that was being done out of the investigation. They had already made their reference to Health and Human Services at that time, right? At that point, all they had done was make an inquiry for... Make their reference to Health and Human Services after investigation. That's correct, isn't it? Well, Your Honor, I'm sorry, I don't know. I don't believe that they made any reference to where they started any proceeding. And if I could just step back one second, Your Honor, because it's a legal issue. It's more important than this factual question that you asked. The factual question would go towards a remand as to where within the 25% and 30% that the relatorships share. But the legal question's more important, and it's the one I'd like to address here. And that is, the United States' position is that the relators are barred if the government starts an investigation prior to filing of the key to your lawsuit. And that is a position that has not been adopted by any court. It's contrary to the text of the statute, the context of the statute, and the legislative history. Is there any authority out there, Your Honor, with respect to a criminal forfeiture proceeding being an alternative remedy? Yes, Your Honor, there's cases that we cited. In the briefings, there's the Bissett case and the Chan case. In the Chan case, which in the exerts of record at page 134, the court specifically says, the court finds the purpose of the False Claims Act would be compromised if the relator's interest in money recovered from Chan in the criminal case were not protected. By allowing Thomas an opportunity to pursue a share of the proceeds recovered at the government's criminal proceeding, the court intends to uphold Congress's intent to encourage private enforcement. As opposed to those cases, the information provided by the regulator would be relayed to our prop to the investigation as that case occurred, right? In those cases, Your Honor, the fundamental fact is that there was investigation. Whether an investigation started a fore time or not, that doesn't go to the question of whether the government has started an action. It cannot then be erased in the courthouse by starting an investigation. The statute sets up various races in the courthouse. If the first file is a relator under E5, you have to file before the government starts a civil action under E3. Although there's no bar for criminal action, if the allegations are disclosed, there has to be an original source. So it seems a challenge here to try to determine whether or not, by looking at the situation we have here, if we try to figure out if there's no alternative remedy, how do we avoid looking into merits? Your Honor, the question of the merits should be decided by the civil action as to whether or not we're in the 25 to 30 percent that relator says we need. But this court said, hold, that whenever there's a damage credit, it has to be paid to the relator. Because you're taking away the key crime damages by accepting the restitution damages. It's based upon what the government knew. What they knew when they started the investigation is insufficient. That's the pre-1986 statute. It was a bar for relators when the government had that information. The False Names Act appears to focus on civil actions. And so we're trying to figure out how, based on your argument, that the FCPA, a relator can intervene in a criminal arbitrary proceeding that's an alternative remedy. So let's say, you know, we have criminal investigations all the time. Somebody finds out about the criminal investigation, as they did here. And then they come forward as offering information and filing a key document to get you to have action. Even though the criminal investigation may be preceded considerably, that person, regardless of what they did, gets to recover in a criminal arbitrary proceeding. In fact, Your Honor, that's exactly what Congress intended. It's hard to say from the statute. The criminal proceedings aren't really referenced in any of this. You have other proceedings that are, of course, around alternative remedies that are referenced. But the purpose of the key damages is fundamentally different from a criminal prosecution, wouldn't you agree? Sorry, Your Honor, but the criminal prosecution that ends in a restitution is a damage right to the defendant. And so it has to be treated as part of the damages. Basically, it's settled in a portion of the damage claim. Those restitution damages is a settlement of the False Claims Act claim. And relators are entitled to a share. In the House report for the False Claims Act, it specifically says, on the alternative, this is House Report 99-66 on the Senate version. It's not the ethical version of the Senate. Your Honor, yes, it's true. But in the Senate version, it says, including but not limited to the legislative disputes. And the statute is written as any proceeding. So I'll talk through it all, Your Honor. There's no question that both the Senate bill and the House bill contemplate that while criminal investigation is going on, Congress wanted the relators to file their actions. While those investigations were going on, on the eve of the indictment, or even after the indictment, I'm trying to figure out which one or where it is, if there's any difference. All the cases put together, but the relator comes forward and says, oh, I want to offer this bit of information.  They get to participate. That's right, Your Honor. It's on the eve, and this was two years before there was an indictment. I'm just taking your argument to the extreme, because under your argument, it sounds like they would be able to participate. If they would be able to participate, even if it's after an administrative proceeding has started, they're not necessarily going to be able to claim it as an alternate remedy, because the government had already started a criminal proceeding. But that's because they won the race to the courthouse and started a proceeding investigation. You're saying you have a witness to fraud in the government. You have multiple witnesses. It's a multi-layered conspiracy. You could have hundreds of people on the eve of the indictment go in and file a key time action. And in your view, they recover from any forfeiture? Under the first to file judge, only one can file. If hundreds have it, it's only the first relator that gets to file. That's what Congress intended. That when a relator files an action, and that information contributes to the discovery and the prosecution, even if the government knew about it ahead of time, even if they were starting an investigation, that's exactly what Congress passed in 1986 amendments to accomplish. Your time has expired. Good morning. I'm here to support Colin Kennedy for the United States. Relators have no basis to intervene in this criminal case. First, a criminal prosecution cannot be an alternate remedy to a civil action under the False Claims Act. Second, even if it could be, this criminal prosecution was not an alternate remedy because the record is clear that the United States did not collect to pursue this criminal case in lieu of the civil key time. And third, relators do not need to intervene in this criminal case because it is clear that they cannot gain the relief that they seek here, the damage credit that Mr. Friedman discussed by going into court in the civil action, which is currently pending, and seeking this relief there. On the first point, a criminal prosecution cannot be an alternate remedy to a civil action under the False, never? Yes, you're in the right place. That's your position. It never can be. And there's several reasons for that. There's a long history of separation between criminal and civil cases. There's also a longstanding principle that private citizens have no rights to participate in criminal prosecutions. And the cases that relators rely on, the two district court cases, Besig and Chan, completely fail to grapple with those principles or even to recognize them. We have no right now, correct. I'm sorry, your honor? That's all we have right now in terms of case law. That's right. Well, there are five district court cases. There is no appellate authority on this precise point. But there are five district court cases that considered a claim by a relator to intervene in a criminal case on the basis of the alternate remedy provision. Besig and Chan are the two that adopt relator's provision and alter a relator's interpretation and allow relators there to intervene. The three other cases, Kurlander, Lessman, and WellCare, denied the motion to intervene. And those cases did rely on the special status that criminal actions have in our legal system and the fact that there is this separation and it would be unprecedented to allow any private citizen, let alone a key town relator, to have a right to intervene in a criminal case. And if you look at the context of the statute, which is what relators ask you to consider, the second sentence of the alternate remedy provision states that if the United States elects an alternate remedy, that the relator shall have the same rights in such proceeding as they would have had if the QTAM had continued. And the QTAM provisions of the False Blames Act grant extremely broad rights to relators to participate in those actions. Relators can call witnesses, cross-examine witnesses, participate in settlement negotiations, object to settlements, and even take the case forward if the United States declines to do so. And so that, it is those rights that relators are asking the court to grant to relators, so there's an equivalent. So are you saying that they can participate in the criminal proceeding, but they can still proceed in their QTAM action? That's exactly right, your honor. The QTAM action is currently pending. But wouldn't the criminal forfeiture proceeding essentially render the judge, you know, the judge unproved their ability to get anything? Well, it's not clear in this case that that is the case. The record is not clear on that. However, it really doesn't matter because as Mr. Friedman pointed out, Van Dyck would be entitled, the defendant would be entitled to a damages credit in the civil QTAM action if and when relators go forward in the civil action, obtain a judgment there, establish their entitlement to a particular share, then at that point, Van Dyck would argue that he's already paid a certain amount to the United States in restitution in the criminal case which would be considered a damages credit under the law and that relators would be entitled to a share of that money because it would be essentially monies paid to the United States by way of compensation for the false claims. So the same relief is available in district court currently in the civil action. And relators can go into district court and seek summary judgment on both liability and damages based on Van Dyck's factual admissions in this criminal plea. So there's nothing preventing them from doing that. They haven't, they've chosen not to do that to this point. And what they told the district court was that they didn't want to do that because they want their money now, they don't want to have to wait. But there's... The money in the criminal forfeiture receipt of that receipt in a QTAM action, would there be any money left for a QTAM action? Well, that's the point that I was trying to make, Your Honor. I'm sorry if I wasn't clear. That money has already been forfeited. And so it has been paid to the United States in restitution, at least part of it. Some was paid to private victims in restitution. And so that money is there and is available for relators to obtain a share. But they must first establish their right to a share. They must establish false claims on liability in the civil action and establish their right to a particular relator's share, which they have not done. So playing this out, what you're suggesting is you go to court and prove the same damages that the United States has already proven in the criminal action? Yes. And they're readily able to do that. Explain to me how the civil judgment will work against the United States. The United States would say, you're absolutely right. You're entitled to a share. You wouldn't oppose that in the civil action. That's right, Your Honor. The government's position is that when restitution is paid in a criminal case, the same facts, the same transactions that are later subject to a civil false claims act action, that that restitution would be considered single damages and that the relators then, at that point, would be entitled to whatever share of that restitution. Is there authority for that? Or is it just the practice? Well, the authority is that there are credits, there are offsets given to defendants in false claims. That case has not been paid. I mean, I've never seen anything quite like this. It is a unique situation, Your Honor, because it hasn't come up very often. Of course, there are only five district court cases ever that have considered it. Right. But I mean, in terms of let's assume that we agree with you. Is there a single case in which this has occurred where a civil action followed and the United States actually paid money? Well, in welfare, in the case that's cited in our 20HA letter, the United States in that case did escrow a portion of the payment or escrowed a portion of the restitution to allow that money to be there when relators went forward and obtained their judgment in the civil action. As far as you know, is there a single case where this has gone to conclusion civil action following a criminal foreclosure? It's actually where the money is actually paid out. There's no published case currently, and I'm not aware. I believe that there are, because I do know that that is the government's position that relators are entitled to that share because of the authority, including the Supreme Court case in the United States versus Bornstein, that whenever there has been funds that have been paid by any source including by the defendant by way of restitution or compensation to the United States for false claims act damages that that does operate as a damages credit. And so it's logical that relators would be entitled to a share of that because it essentially is single damages and then they would, of course, be entitled to a share of any other monies that are collected after they receive that judgment, which would entail them to travel damages and penalties. So any decision that they could not and that rejects them their request to be part of the criminal proceeding would not be used adversely against the relators in the false claims action and the key jam action? Not after the point at which they obtain a judgment, that's correct, because it's a completely separate issue. At that point, after there's a judgment, it would not be like an alternate remedy, a share of the alternate remedy provision. It would be a share of total monies paid to the United States, including restitution. But is there a statute that says you as a relator cannot you're prohibited from joining a criminal or criminal proceeding? Well, there's not a statute that says that. There's not a part of the false claims act that prohibits relators from intervening. It's the contrary. It's the long-standing history of the fact that there are no instances that I'm aware of, certainly none that are cited in the briefs, where any private citizen, let alone a relator, is granted the right to essentially act as a full party in the criminal case. And I understand that. So they're trying, or against, there's nothing prohibiting them from what I can see in terms of statutory language. So they're trying, and so to make that determination, apparently as the court did here, said it applied a lot of the same sort of considerations that court would apply on whether or not they'd be successful in a key to proceeding public disclosure. How did you find out about it? What did you contribute? And that's the sort of disconcerting part about this because that decision by the district court based on those factors is not essentially already predetermined judgment in the key damage. Well, I think that because, Your Honor, those are two possibly distinct analyses. What the district court was looking at in this case was did the United States elect to pursue the criminal prosecution in lieu of the civil key damage. And the factual analysis the district court's opinion is that this is simply not what happened because there was, as Your Honor pointed out, there was a civil key damage. It is also the case that once the criminal information was filed and the criminal plea finalized, the United States continued to investigate the civil key damage for four months after that point. So it's simply not accurate to say that the United States elected to pursue the criminal prosecution after it had declined the key damage, which is the formulation this court adopted in Farajas, is consistent with all the other appellate authorities who have looked at this issue. The United States must essentially abandon the civil key damage and then decide to pursue an alternate remedy instead and that's not what happened here. And so that is the issue the district court was addressing. If the relators then go and obtain a judgment in the civil key damage, there will be another discussion at that point and another analysis by the district court in that case about the share that relators are entitled to, which has some overlap, factually, with the analysis of whether the election occurred here, but is a different determination. One very quick question. Did in fact, the district court never used the wrong standard in determining whether or not there should have been an evidentiary hearing in this matter was requested by the relators? Did they do it? Was the wrong standard actually used to decide to make a decision? No. If I understand your question, it's whether the district court used the wrong standard in denying the evidentiary hearing. And no, no, the district court did not use the wrong standard and the reason... Do you think the standard, when we articulate the standard, do you think it's appropriate? The standard is whether relators or whether any party has offered facts that are sufficiently specific, definite, detailed, and non-conjectural to warrant an evidentiary hearing. Here, all relators offered to the district court was a declaration from counsel saying that he believes that certain information was used by the government. And in fact, at the hearing before the district court, relators counsel told the court that there was really no significant factual dispute here, that it was really a legal issue, and that the key facts about when the government's criminal investigation started and what it consisted of were not in dispute. He said that several times to the district court. Well, you just said that standard. That's the standard that's applied in a motion to suppress, isn't it? I mean, so is that the standard we apply here? Well, that's what the question was. Yes, and for the request for an evidentiary hearing, yes, I believe that's the standard that would also apply here. The party has to come forward with some facts that justify and show that there's some evidentiary dispute. And as I said, the relators counsel told the district court at least several times during the hearing that there's no real factual dispute here about the fact that the United States had a criminal investigation that started in March of 2011, which was well over a year before Relator's Key Sam was filed. And it's that criminal investigation that led directly to the criminal resolution here. And those are factual findings the district court made which are well supported by the record. Let me ask you a different question. Do you see the same analysis applied to forfeiture cases as restitution cases? Yes, it's the same analysis because the provision that relators want to evoke here, the alternative remedy provision, provides those broad rights that I discussed. And so there's no logical limiting principle to say, well, this only applies to forfeiture cases, because of course, as Your Honor well knows, there can be many criminal cases where there's no forfeiture proceeding. There's just a restitution award. And so there's no way to say, well, it may be concatenated to the forfeiture proceeding because there's no basis in this statute to do that. Thank you, Your Honor. Thank you. We'll give you two minutes. Your Honor, as the United States conceded, a relator is entitled to a share of the restitution. They just must wait when it's claimed as a credit by the defendant. So when the defendant doesn't pay it, we're entitled to get a recovery of it. But when the government gets paid, they're entitled to keep all of that and not apportion it. That concession concedes the point that we're trying to raise here, which is that the money that was recovered as a restitution damage is going to apply against the damages. And therefore, the Bornstein case that was cited is correct. They are entitled to a single credit after traveling, but relators should get paid that share now. In the wellness case that is cited by the government, then that gives the escrow the maximum statutory share. That's what we asked now, that the court order that the maximum 30% share escrowed in an interest-bearing account. Relators cannot claim interest against the government, but nothing stops the government from putting those funds into a interest-bearing account. And none of the money has been disbursed to this court, besides this appeal. So if this court was to rule that the maximum statutory share should be apportioned, then the relators would apply to the civil court for an order that determines what percentage of that share of that restitution they're entitled to. The judgment is a question about whether or not there was any prohibition from this decision. And applying the civil case is very important. In the court below, the judge ruled that as long as the government has started an investigation, relators are not entitled to a share. That is a pre-1986 view of the statute, and it is incorrect. It's not supported by the just, or the context, or the legislature. Thank you. Thank you.
judges: Thomas, Murguia, McCalla